IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ADAM J. BROWN, | ) ) ) | Case No. 1:19-cv-151 |
| Plaintiff | ) ) ) ) | UNITED STATES MAGISTRATE JUDGE RICHARD A. LANZILLO |
| v. | ) ) | |
| J. WETZEL, et al., | ) ) | MEMORANDUM OPINION AND |
| Defendants | ) ) ) | ORDER ON DEFENDANTS' MOTION TO DISMISS [ECF No. 17] |

I.     Introduction

Plaintiff Adam J. Brown, an inmate in the custody of the Pennsylvania Department of

Corrections (DOC), initiated this pro se civil rights action based on events that occurred during his

previous confinement at the State Correctional Institution at Albion (SCI-Albion). ECF No. 1.

Brown asserts that each of the Defendants – DOC Secretary John Wetzel, SCI-Albion

Superintendent M. Clark, SCI-Albion Deputy Superintendent B. Flinchbaugh, and SCI-Albion

Corrections Officers Fait and Seely – violated his rights as secured by the First, Eighth, and

Fourteenth Amendments to the United States Constitution. *Id.* He seeks injunctive relief and

compensatory and punitive damages pursuant to 42 U.S.C. § 1983. *Id.*

Presently pending is Defendants' motion to dismiss for failure to state a claim [ECF No. 17],

which seeks dismissal of Brown's claims against Defendants in their official capacities, his requests

for declaratory and injunctive relief, his claims against Secretary Wetzel, and his Fourteenth

Amendment due process claim against Seely. Defendants have filed a brief in support of their

motion [ECF No. 18], and Brown has filed a response in opposition [ECF No. 32]. As such, this

matter is fully briefed and ripe for disposition.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all
proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

II.     Factual Background

The following allegations from Brown's complaint are accepted as true for purposes of this motion. On July 5, 2017, prison officials temporarily moved Brown into the Restricted Housing Unit/Diversionary Treatment Unit (RHU/DTU) at SCI-Albion. ECF No. 6 ¶ 9. Upon arriving at the RHU/DTU, Brown was strip searched and his clothing, most of which he had purchased himself from the prison commissary, was replaced with generic DOC prison garb. *Id.* ¶¶ 11, 14-16. Pursuant to DOC policy and procedure, Brown's clothing should have been placed in the inmate property room with the rest of his belongings and returned to him later. *Id.* ¶ 12.

On July 12, 2017, Brown learned from Seely, the official in charge of inmate property, that he was being temporarily transferred to another prison the following morning for a court hearing. *Id.* ¶ 17. Brown complained that his property had not been inventoried yet and that he needed some of the legal materials in his property for the hearing. *Id.* ¶ 18. When Seely ignored his complaint, Brown threatened to file a grievance. *Id.* ¶¶ 19-20. Seely again refused to allow Brown to inventory his property, called him a "crybaby," and stated that "he would go in Brown's property and decide what legal material he would let Brown take, and . . . if his 'shit' came up missing then maybe he would think twice before threatening people with grievances." *Id.* ¶ 21.

On July 31, 2017, Brown returned to SCI-Albion and "was pulled out by Fait, Seely, and a couple other officers to inventory his property." *Id.* ¶ 23. Brown immediately noticed that the clothing taken from him upon his arrival at the RHU/DTU was missing. *Id.* ¶ 24. When Brown asked about the missing clothing, Seely reminded him that "he told him 'shit' might come up missing if he kept filing grievances." *Id.* ¶ 25. Brown asked Fait for help, prompting Fait to joke that he could file a grievance but that "he might end up missing more property." *Id.* ¶ 26.

On August 3, 2017, Brown received a confiscation slip from Seely informing him that his clothing had been confiscated because it was "wet." *Id.* ¶ 27. Brown avers that his clothing was not wet when he removed it. *Id.* ¶ 28.

On August 8, 2017, Brown approached Superintendent Clark and complained about the missing property, noting that it had caused him to experience "suicidal ideation because his family refused to send him more money due to the DOC taking the things he buys with their money." *Id.* ¶ 31. Clark told Brown that "no one cared if he killed himself" because "someone else will fill his bed" and that he might get his property back if he "withdrew his grievance and didn't file anymore." *Id.* ¶ 32. Clark also threatened to "tell the officers to throw out all his property" if he kept filing grievances. *Id.*

On August 10, 2017, the Program Review Committee (PRC) met with Brown to discuss his "documented history of suicide attempts, self-injurious behavior," and serious mental illness. *Id.* ¶ 34. Brown informed them that "his missing property was the reason he kept attempting to kill [him]self." *Id.* ¶ 36. Flinchbaugh told him to "grow up and stop using his mental health issues as an excuse," and "that he needed to stop wasting people's time with fake suicidal games and either kill [him]self for real or lay down." *Id.* ¶ 37. He also told Brown that his next failed suicide attempt would result in more property being taken. *Id.* ¶ 37.

Brown later wrote to Wetzel and "explained the situation regarding his missing property and the actions of the employees at SCI Albion." *Id.* ¶ 39. Wetzel never responded. *Id.* ¶ 40.

III.     Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S.

3

at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)).

In making this determination, the court must accept as true all well-pled factual allegations in the

complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*,

281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a

complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic

recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265,

286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are

unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The*

*Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902,

906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations.

*Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York,*

*Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the

following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'
> Second, the court should identify allegations that, 'because they are no more than
> conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-
> pleaded factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629

F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Plaintiff is proceeding pro se, the allegations in the complaint must be held

to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519,

520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV.     Analysis

Based on the facts set forth above, Brown alleges the following claims: (1) a Fourteenth Amendment due process claim against Seely based on the stolen clothing; (2) a First Amendment retaliation claim against Clark, Flinchbaugh, Fait and Seely based on their refusal to return his property unless he withdrew his grievance; (3) an Eighth Amendment cruel and unusual punishment claim against Clark, Flinchbaugh, Fait and Seely based on their "various threats and treatment towards the plaintiff and his property"; and (4) a supervisory liability claim against Wetzel based on his "knowledge [of] . . . and failure to address and resolve" the violations committed by his subordinates. ECF No. 6 ¶¶ 60-63. Defendants, in turn, seek dismissal of: (1) Brown's claims for injunctive relief, and against the individual Defendants in their official capacities, based on the immunity afforded the states by the Eleventh Amendment; (2) all claims against Wetzel based on lack of personal involvement; and (3) Brown's Fourteenth Amendment due process claim against Seely for failure to state a claim.[2] Each of these arguments will be addressed in turn.

1.     Official Capacity Claims

Defendants first contend that Brown's claims against the Defendants in their official capacities are barred by the immunity afforded to the Commonwealth of Pennsylvania by the Eleventh Amendment. It is axiomatic that "the Eleventh Amendment proscribes actions in the

---

[2] Defendants do not challenge Brown's retaliation and cruel and unusual punishment claims in their motion to dismiss.

federal courts against states, their agencies, and state officials acting within their official capacities."
*See, e.g., O'Donnell v. Pennsylvania Dept. of Corrections*, 790 F.Supp.2d 289, 305 (M.D. Pa. 2011) (citing
*Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996)).  As a department of the Commonwealth of
Pennsylvania, the DOC is immune from suit in federal court unless said immunity has been
abrogated by Congress or waived by the state.  *MCI Telecomm Corp. v. Bell-Atlantic-Pennsylvania*, 271
F.3d 491, 503 (3d Cir. 2001).  *See also Lavia v. Pennsylvania, Dept. of Corrections*, 224 F.3d 190, 195 (3d
Cir. 2000) (noting that, as an agency of the Commonwealth of Pennsylvania, the DOC is entitled to
assert the immunities afforded by the Eleventh Amendment).  Moreover, "[b]ecause the
Pennsylvania DOC is a part of the executive department of the Commonwealth of Pennsylvania, its
employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they
were sued in their official capacities."  *Johnson v. Wenerowicz*, 440 Fed. Appx. 60, 62 (3d Cir. 2011).

It is well-settled that "Pennsylvania has not waived its immunity from suit in federal court."
*Toth v. California Univ. of Pennsylvania*, 844 F.Supp.2d 611, 648 (W.D. Pa. 2012) (citing 42 Pa.C.S.A. §
8521(b)).  Nor did Congress intend by the general language of § 1983 to override the traditional
sovereign immunity afforded to the states.  *Quern v. Jordan*, 440 U.S. 332, 342-45 (1979); *see also Toth*,
844 F.Supp.2d at 648.  Consequently, the Defendants – each of whom is an official, officer, or
employee of the Commonwealth of Pennsylvania – are entitled to immunity from any monetary
claims against them in their official capacities.  Defendants' motion to dismiss on this basis will be
granted.

Brown is also seeking injunctive and declaratory relief against the Defendants based on the
same conduct underlying his claims for monetary relief.  While it is true that Eleventh Amendment
immunity does not apply to claims for injunctive relief against state officials to enjoin conduct
alleged to be an ongoing violation of federal law or the Constitution, *see Ex Parte Young*, 209 U.S.
123, 129 (1908), such claims must be based on an ongoing violation, rather than past conduct.
*Seminole Tribe*, 517 U.S. at 73.  Consequently, "[a]n inmate's transfer from the facility complained of

6

generally moots [his] equitable and declaratory claims." *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993). In light of Brown's transfer from SCI-Albion to SCI-Greene (and, ultimately, to SCI-Camp Hill), his requests for injunctive and declaratory relief are dismissed as moot.

2.      Lack of Personal Involvement

In order to prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. Moreover, the plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

These principles apply with equal force where the defendants are supervising prison officials. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d

3.    Failure to state a claim

Finally, Defendants argue that Brown's Fourteenth Amendment due process claim must be dismissed because the prison's grievance procedure "'provides an adequate post-deprivation remedy' in satisfaction of the Due Process Clause for prisoners making claims for damage to or loss of personal property." *Davis v. Harlow*, 2013 WL 1195033, at \*9 (W.D. Pa. Mar. 22, 2013) (quoting *Durham v. Dept. of Corr.*, 173 Fed. Appx. 1544, 157 (3d Cir. 2006)). The Court agrees.

In order to prevail on his due process claim, Brown must demonstrate that Defendants confiscated his property *and* that he was not afforded a post-deprivation administrative remedy. *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008) (noting that the unauthorized intentional deprivation of property by a prison official does not violate the Due Process Clause where the inmate has a meaningful post-deprivation remedy available to him) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). *See also Mearin v. Folino*, 2013 WL 5332120, at \*7 (W.D. Pa. Sept. 23, 2013) ("[I]n order to succeed on a due process claim, an inmate must not only show that his property was confiscated but that he was not afforded a post-deprivation administrative remedy."). The United States Court of Appeals for the Third Circuit "has found that adequate post-deprivation remedies include the ability to file a state tort action or use of the prison's grievance process." *Mearin*, 2013 WL 5332120, at \*7 (citing *Tapp v. Proto*, 404 Fed. Appx. 563, 567 (3d Cir. 2010). The existence of either of these post-deprivation remedies "forecloses any due process claim . . . even if [the] inmate is dissatisfied with the result of the process." *Id.* (quoting *Iseley v. Horn*, 1996 WL 510090, at \* 6 (E.D. Pa. Sept. 3, 1996)).

Here, Brown acknowledges in his complaint that the prison provided an appropriate grievance process and that he availed himself of that process. ECF No. 6 at ¶¶ 41-58. Courts in the Third Circuit have routinely held that the DOC's grievance system satisfies the Due Process Clause. *See, e.g., Spencer v. Bush*, 543 F. Appx. 209, 213 (3d Cir. 2013). State tort law may also provide Brown

with a remedy.[3] *See Hernandez v. Corrections Emergency Response Team*, 771 Fed. Appx. at 145 ("Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy") (*citing* 42 Pa. C.S. § 8522(b)(3)). As such, Brown's due process claim against Seely must be dismissed, with prejudice. Moreover, due to the deficiencies highlighted in Defendants' motion, any attempted amendment would be futile.

V.     Conclusion

For the reasons stated herein, Defendants' motion to dismiss [ECF No. 17] is GRANTED. It is hereby ORDERED that:

1) Brown's claims against Defendants in their official capacities, and his request for declaratory and injunctive relief, are dismissed, with prejudice;

2) Brown's claims against Wetzel are dismissed for lack of personal involvement; and

3) Brown's Fourteenth Amendment due process claim against Seely is dismissed, with prejudice.

Based on the foregoing, the Clerk is directed to terminate Wetzel from the docket. Finally, the Court notes that, because Defendants did not challenge Brown's retaliation and cruel and unusual punishment claims in their motion, those claims remain pending.

RICHARD A. LANZILLO
United States Magistrate Judge

Dated: August 19, 2020

---

[3] For example, Brown may be able to pursue a conversion claim in state court to recover his missing property.